UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

DEBRA CRIBBS, )
 )
 Plaintiff, )
 )
v. )
 ) Case No. CV615-037
CAROLYN COLVIN, )
Acting Commissioner of )
Social Security, )
 )
 Defendant. )

## REPORT AND RECOMMENDATION

Alleging disability due to heart problems, high blood pressure, diabetes, and back pain, Debra Cribbs seeks judicial review of the Social Security Administration (SSA) Commissioner's denial of her application for Disability Insurance benefits (DIB), and Supplemental Security Income (SSI). She testified at an administrative-review hearing before an Administrative Law Judge (ALJ) and unsuccessfully appealed an adverse ruling to the SSA's Appeals Council. Doc. 11-2 at 2.[1]

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at doc. 11.

# I. GOVERNING STANDARDS

In social security cases, courts:

> review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the ALJ applies

> a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform

her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

"For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured. 42 U.S.C. § 423(a)(1)(A) (2005). Because [Cribbs'] last insured date was [June 30, 2014, doc. 11-2 at 41], her DIB appeal requires a showing of disability on or before that date." *Moore*, 405 F.3d at 1211. The disability period under consideration here is from July 31, 2011 through August 12, 2013. Doc. 15 at 3.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

3

## II. BACKGROUND

Cribbs, 51 when the ALJ denied her DIB application and 49 on her alleged onset date, doc. 11-2 at 47; doc. 11-5 at 2, completed two years of college education (accounting), and last worked as a deli worker in 2010 when, she testified, the heavy lifting from unloading trucks caused her to suffer unmanageable back pain. Doc. 11-2 at 58. She alleges disability, however, starting from July 31, 2011, after which she has not worked any job. Doc. 11-2 at 42, 59 (her attorney amended the start date of her claim based on a medical exhibit). By that time, her attorney explained, "she had uncontrolled diabetes, double vision, lower extremity swelling and pain[,] and it's all as a result really of the progressive issue from the higher right hand stroke [that she suffered] in 2004 which technically -- then the diabetes complicates the issue." *Id.* at 59.

Cribbs herself testified that she was born with a hole in her heart and in 1998 "was diagnosed with degenerative joint disease in my back. I have high blood pressure, I have diabetes, last year I found out that I have a kidney that is not functioning properly, and I'm not sure what the outcome is going to be with that." Doc. 11-2 at 60. She suffered a heart

4

attack in 2006, "[s]o now I'm on nitroglycerin pills from that." Doc. 11-2 at 61. She also suffered a work-stress-caused stroke in 2004, but "recovered very quickly." *Id.* Cribbs also smokes "about a half a pack a day." *Id.*

For the three to four months before the hearing Cribbs had not, due to indigence, received any medical treatment other than at the emergency room. Doc. 11-2 at 62. She cannot "sit for over 30 minutes at a time, not comfortably." *Id.* She can walk but "[n]ot even a quarter of a mile . . . without having to stop." Doc. 11-2 at 63. And "[a]ccording to what I was told after the heart attack I'm not supposed to lif[t] over five pounds and I try not to." *Id.* She takes "Lasix" to address swelling in her legs but that's ineffective, so she sits with her legs elevated (using a stool) for "about two to two and a half" hours a day. *Id.* at 65.

Cribbs shares a mobile home with her "ex-mother-in-law." Doc. 11-2 at 63. She can take care of her personal needs like bathing and dressing. *Id.* Also, she helps her ex-mother-in-law clean and do the laundry. *Id.* After listening to this, the ALJ asked her to "describe an average day in your life. What time do you get up and what do you do?"

5

Doc. 11-2 at 64. She replied:

> Normally we get up at 6:30 in the morning, we both have our coffee, then she [the mother] has seven Chihuahuas, so she fixes them something to eat, we make sure that they're fed and taken care of. Then we -- either she will sweep or I will sweep, we sweep the house, again we let the dogs back out and that's basically a day, other than we might make us a sandwich or something during the day.

Doc. 11-2 at 64.

Cribbs has fallen several times in the year or two before the hearing. She has a cane but rarely uses it. She holds onto the wall in her home to get around. Doc. 11-2 at 66. Plaintiff has been on diabetes medication since 1998 and for the most part stays indoors because she is afraid that if she goes outside she might fall and not be able to get back up. *Id.* at 67. However, she suffers no side effects (*e.g.*, lack of concentration) from her diabetes medication. *Id.* After she stated that her medications cause no side effects "such as tiredness or los[s of] concentration," *id.*, her attorney asked her:

> Q. Well in your words what is it that keeps you from working at a job, any job eight hours a day, five days a week --
>
> A. The fact that --
>
> Q. -- any job, not just the past jobs?

A. The fact that I cannot sit for a long period of time, I cannot stand for a long period of time. Most jobs around here either want you to be able to sit for hours at a sewing machine or they expect you to be on your feet for six to eight hours steading working in either a convenience store or somewhere like Walmart and --

Q. Okay, and what limits you?

A. Because of the degenerative joint disease in my back, it bothers my back.

Doc. 11-2 at 68.

Cribbs also testified that at times she has "difficulty grasping or handling things." *Id.* She can pick something up with her right hand but then drops it. "It's like I have no grip in that hand at times." *Id.* That condition "comes and goes," and she last endured it "a couple of months ago." *Id.* at 68-69. She says she "can kneel, [but] I can't bend real easy. As far as bending over to pick something up I can't do that." She explained that "it bothers my lower back." *Id.* at 69.

The ALJ concluded, after consulting a vocational expert (VE), doc. 11-2 at 69-71, that Cribbs retained the RFC for light, sedentary work, and that the medical record "fails to support the level of functional loss" Cribb claims. *Id.* at 45. While her "medically determinable impairments

could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. . . ." *Id.* He found significant the fact that Cribbs "has not received any recent treatment" and that "the record reflects a history of non-compliance with prescribed treatment." *Id.*

To that end, the ALJ repeatedly cited Cribbs' non-compliance with prescribed treatments. *See, e.g.*, doc. 11-21 at 45 (noting that, not only is her diabetes "non-insulin dependent," but that she had been -- just prior to seeking ER treatment for elevated blood glucose levels and double vision, "non-compliant with oral medication for one year"). He acknowledged that she suffers from things like heart problems and diabetes, doc. 11-2 at 45, 46, and that those "impairments may cause [Cribbs] some discomfort," but they "do not preclude all work." Doc. 11-2 at 45. In fact, the ALJ further found, those ailments do not present as particularly severe. She does, after all, continue to smoke cigarettes, doc. 11-2 at 46, and state examiners support the conclusion that she can engage in light exertion with the option to change positions, which is what

8

/the VE cited in opining that Cribbs can perform available jobs like a cashier, parking lot attendant, or furniture rental clerk. Doc. 11-2 at 48, 71.

In that respect, the VE expressly accounted for (which the ALJ also accepted) Cribbs' subjective complaints and exertional limitations. Indeed, the VE even opined that she could *not* perform her past work. Doc. 11-2 at 70 (VE's testimony); doc 11-2 at 46 (ALJ's ruling that in Cribbs' prior claims she was found capable of performing medium exertion task but her current RFC reflected "even greater limitations," so now only a "light exertion" RFC was warranted). Nevertheless the "sedentary" work level RFC "is supported," the ALJ concluded, "by the medical evidence in the record including the objective findings, the claimant's level of activity, and [her] testimony at the hearing." *Id.* at 46.

### III. ANALYSIS

Cribbs first complains that the ALJ and Appeals Council failed to evaluate her treating doctor's opinion as required by 20 C.F.R. § 404.1527(d). Doc. 19 at 1-4. "Social Security regulations require the

ALJ to consider many factors when evaluating medical opinion evidence. *See* 20 C.F.R. § 404.1527(d)." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). The more well-explained and well-supported an opinion is, the more weight it receives. 20 C.F.R. § 404.1527(c)(3). And "the more consistent an opinion is with *the record as a whole*, the more weight" it garners. *Id.* at (c)(4) (emphasis added).

The deference owed medical experts is further stratified: "[T]he opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."[2] *McNamee v. Soc. Sec. Admin.*, 164 F.

---

[2] Importantly, the treating-examining-consulting hierarchy does not mandate that an ALJ always weight a treating physician's opinion more than the others. Good cause exists to deviate from the general weighting rules if:

> 1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

App'x 919, 923 (11th Cir. 2006). Non-examining, consultative physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and determine that weight based upon their consistency with record evidence. 20 C.F.R. § 404.1527(f); *see also Tapley v. Colvin*, 2015 WL 764022 at * 3 (S.D. Ga. Feb. 23, 2015) ("As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.") (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Here the ALJ "considered the opinion of [Cribbs'] physician, Thomas Ferrari, M.D., (Ex. 5F)." Doc. 11-2 at 46. There is just one (April 26, 2012) opinion from him -- that Cribbs "could perform sedentary exertion," and "is able to lift under 10 pounds" but suffered "other postural and manipulative limitations." *Id.* But Dr. Ferrari, the ALJ noted, "offered an opinion that the claimant could not perform light exertion by using a check box form. . . . This opinion is not entirely credible because it contains no medical findings or narrative to support such profound limitations." Doc. 11-2 at 46.

---

*Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

The Commissioner says that's enough. That is, sufficient evidence supports the ALJ's finding. Doc. 18 at 8. Ferrari, the Commissioner points out, only examined Cribbs once and "his findings are contrary to the objective medical evidence and record as a whole." Doc. 18 at 8. Cribbs insists that's just not true:

> Dr. Ferrari was Plaintiff's treating physician for at least several months at the time he prepared his treating source statement. Indeed, on July 31, 2011, Plaintiff reported with right lower extremity pain, swelling, and a glucose level of 262. (Tr. 257). Upon discharge, she was advised to follow up with her primary care provider, Dr. Ferrari (Tr. 258). Exhibit 4F contains an examination from Dr. Ferrari dated April 10, 2012, nearly one year later. (Tr. 270). Clearly, the claimant had treated with Dr. Ferrari at least from July 31, 2011 to April 10, 2012, despite Defendant's assertions to the contrary. Dr. Ferrari authored his residual functional capacity assessment on April 26, 2012, indicating that Plaintiff's impairments had been present at that level for one year (Tr. 276).

Doc. 19 at 2.

The Court disagrees. Cribbs' brief simply strings together medical record cites to *suggest* that Ferrari had been treating her over time, but the record does *not* support that claim.[3] She next argues that if the ALJ

---

[3] She cites Tr. 257 (doc. 11-7 at 23), which is simply an August 1, 2011-run lab test "perfor[m]ed by nursing service," and that precedes a "7/31/2011" dated set of "Discharge Instructions" directing her to "Follow-up with: Thomas Ferrari, M.D." as well as a healthcare center in Vidalia, Georgia. Doc. 11-7 at 24. That lab test sheet does not in any way indicate that Cribbs was seen by Dr. Ferrari that day. For that

12

"was still unconvinced as to the nature or extent of the claimant's relationship with Dr. Ferrari, and the basis for his limitations, the ALJ had a duty to re-contact [this] treating physician for clarification." *Id.* Also, Ferrari did more than check boxes, she maintains, though his writing is illegible. *Id.* at 3.

Those contentions likewise fail, and substantial record evidence supports the ALJ's decision to afford Dr. Ferrari's opinion little weight. The record shows that Cribbs' own lawyer asked Dr. Ferrari to complete a "Medical Assessment of Ability To Do Work Related Activities (Physical)."

---

matter, that page is part of a page-cluster showing that Cribbs, consistent with the "ER-indigency" claim she made at the hearing, twice visited a local ER for *non*-emergency level medical care in 2011. (The document cluster itself bears notations that she had no insurance, *see, e.g.*, doc. 11-7 at 19). Her first (July 31, 2011) ER visit record shows "Oddi, Bernard F," as the "Attending Physician." Doc. 11-7 at 19; *see also id.* (noting she was unemployed and uninsured). A radiology report showing a "deep venous system of the right lower extremity was evaluated" (and no problem was found in that regard) by Dr. John Yeoman, as referred by Dr. Oddi. Doc. 11-7 at 21. Cribbs also was given a glucose test performed by a nursing service. Doc. 11-7 at 23. Her discharge sheets advised her to "Follow-up with" Dr. Ferrrari. Doc. 11-7 at 24. It does *not* confirm that he saw her that day.

Plaintiff's second visit to that ER was December 17, 2011. Tr. 242, doc. 11-7 at 7 ("Admit Date 12/17/11"); *see also* doc. 11-7 at 11 ("Chief Complaint: DOUBLE VISION. (high blood sugar)."); *id.* at 13 ("CLINICAL IMPRESSION[:] uncontrolled diabetes"). That paperwork likewise does not show she was seen by Dr. Ferrari.

The following statement in her brief, then, is *unsupported*: "Clearly, the claimant had treated with Dr. Ferrari at least from July 31, 2011 to April 10, 2012, despite Defendant's assertions to the contrary." Doc. 19 at 2.

13

Doc. 11-7 at 38. On that form Ferrari did check off that she suffered a "Lifting/Carrying" impairment "10 under" (she can lift no more than 10 pounds). Doc. 11-7 at 39. He check-marked "no" to the question, "Is sitting affected by this impairment?" Doc. 11-7 at 40. And, although he indicated a number of limitations, and checked "No" as to whether he thought she could perform "LIGHT WORK,"[4] he did check "Yes" to whether, "[in] your medical opinion, [the patient can] perform SEDENTARY WORK ON A SUSTAINED BASIS, at this time (40 hrs. per week) less a reasonable time for lunch and breaks." Doc. 11-7 at 42.

That comports with the ALJ's finding -- that she in fact can perform sedentary work, doc. 11-2 at 47-48 (cashier, parking lot attendant, furniture rental clerk), which he further specified as "light exertion with a [Specific Vocational Preparation, (SVP)] of 2." Doc. 11-2 at 48.[5] *See*

---

[4] That form explained that Light Work "involves lifting no more than 20lbs. at a time with frequent lifting/carrying of objects weighing up to ten pounds. Jobs in this category require a good deal of walking/standing with some pushing and pulling of arm or leg controls." Doc. 11-7 at 42.

[5] As has been explained:

> An SVP of 1 or 2 corresponds to unskilled work as defined in the Commissioner's regulations. *See* Social Security Ruling (SSR) 00–4p, 2000 WL 1898704, at * 3 (2000) ("Using the skill level definitions in 20 C.F.R. [§§ ] 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2.... [T]he

*Brown v. Astrue*, 2012 WL 2979046 at * 2, 5 (M.D. Fla. Jul 20, 2012) (similar case where the VE was also asked to account for "additional limitations" and the range of available jobs was similarly narrowed; substantial evidence supported ALJ's determination that claimant could not perform past work "as a school bus driver" but could now perform as "a food checker (sedentary), office helper (light), and cashier II (light).").[6]

---

regulatory definitions of skill levels are controlling.").

*Anderson v. Astrue*, 2011 WL 3843683 at * 2 n. 5 (S.D. Ala. Aug. 30, 2011); *see also id.* at * 4 n. 7 ("[T]he ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles. *See Jones v. Apfel*, 190 F.3d 1224 (11th Cir.1999); *Hurtado v. Astrue*, 2011 WL 1560654 (11th Cir. Apr. 25, 2011) (affirming holding in *Jones* ).").

[6] The Court pauses to note that if Cribbs could not read her own treating doctor's handwriting, then she should have returned it to Ferrari for "handwriting translation" before adducing it here, as her initial burden of production. Again, the burden of proving disability lies with the claimant. *Moore*, 405 F.3d 1208 at 1211. There is some obligation of the ALJ to develop the record, but it cannot extend to filling obvious "illegibility holes" that the represented claimant could not be bothered to fill. That negates the very initial burden of production concept illuminated by 20 C.F.R. § 416.912(c) ("Your responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim."); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim").

It follows that the ALJ did not err, as Cribbs claims (doc. 15 at 19) in failing to marshal a doctor's opinion regarding her RFC. *See Manasco v. Colvin*, 2014 WL 1513173 at * 3 (N.D. Ala. 2014) ("Developing a full and fair record, however, does not

Cribbs contends that the ALJ's rejection of her subjective limitation testimony lacks evidentiary support. Docs. 19 at 6 ("The ALJ failed to properly assess [her] credibility under SSR 96-7P"). Where, as here, a claimant attempts to establish disability through her own testimony of subjective limitations, the "pain standard" applies. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). That demands:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Watson v. Colvin*, 2015 WL 8467014 at * 6 (S.D. Ga. Nov. 18, 2015) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Claimants like Cribbs may rely on their own subjective testimony of pain, which, if supported by medical evidence, would be sufficient to establish disability. But at the same time, an ALJ is free to discredit

---

require an ALJ to secure a medical source opinion regarding the claimant's RFC.").

that testimony. *Id.*[7] He need only "articulate [his] explicit and adequate reasons for doing so." *Id.*

The ALJ did that here. He evaluated Cribbs' credibility and gave sufficient reasons for concluding that her subjective pain and mobility-restriction claims were not sufficiently credible. His credibility findings were both explicit and supported by citation to specific evidence. An example:

> Although the hearing is only a snapshot of the entire mosaic, the claimant's testimony was not entirely credible. The record reflects that [Cribbs] has received minimal treatment for her impairments. In addition, [she] has not received any recent treatment. Further, the record reflects a history of non-compliance with prescribed treatment. For instance, the claimant sought emergency treatment for diabetes and related complications (ex. 1F/8). However, [Cribbs] was non-compliant with taking medications for an entire year. . . . [She] responds

---

[7] As the Eleventh Circuit explained:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986); *Landry*, 782 F.2d at 1152. If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so. *Hale*, 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale*, at 1054; *MacGregor*, 786 F.2d at 1054.

*Holt*, 921 F.2d at 1223.

17

reasonably well when compli[ant] with treatment (Ex. 1F). I also note that the claimant testifies that she lacks the financial means to obtain medical care yet medical findings have been minimal with no record of visiting an [ER]. Further, the claimant's activities are inconsistent with total disability. For instance, [she] stated several times during the hearing that [she] could perform tasks if they were necessary. This suggests that [her] limitations are self-imposed versus medically necessary. . . . [Her] testimony was vague about the frequency and severity of her symptoms. She stated that she drops items but also recalled that the last time she dropped something was a few months ago. [¶] The claimant alleges heart problems but continues to smoke cigarettes, suggesting that her symptoms are not that limiting.

Doc. 11-2 at 45-46.

It remains the province of the ALJ to determine a claimant's credibility so long as he explains his credibility determination. *Holt*, 921 F.2d at 1223-24. Here he highlighted and assessed the contradictions in Cribbs' statements and the record, which a reasonable person, *see Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), could conclude supports finding her not credible. *See Moore*, 405 F.3d at 1212 (inconsistencies between claimant's descriptions of daily activities and claimed infirmities supported ALJ's credibility finding). While the Court might interpret that evidence to the contrary, that's not the standard of judicial review here. As explained

*supra*, the ALJ need do only what he did here: sufficiently explain his reasoning on a record with enough (*i.e.* substantial) evidence to support it. *See, e.g., Marley v. Comm'r of Soc. Sec.*, 2015 WL 847376 at * 7 (M.D. Fla. Feb. 26, 2015) ("The ALJ therefore sufficiently explained his reasons for finding Plaintiff less than entirely credible, and it is not for the Court to reweigh the evidence nor will the Court disturb a clearly articulated credibility finding that is supported by substantial evidence."). That's the extent of this Court's review, and the remainder of plaintiff's arguments go to evidence reweighing, which the Court cannot do.

## IV. CONCLUSION

The ALJ's conclusion that Cribbs is "not disabled," doc. 11-2 at 48, therefore should be **AFFIRMED** and this case **DISMISSED WITH PREJUDICE**.

**SO REPORTED AND RECOMMENDED**, this  27th  day of May, 2016.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA